5-13-0582 American Service Insurance v. Lynch Okay, Ms. Viss? I'm assuming this case can't be settled. Apparently not. There have been no offers. Well, we're hoping that you can all settle it. We're hoping you can all settle it, but we're ready and waiting for the argument. We're encouraged by the last case. We like that. Okay, you may proceed. Thank you. I represent David Miller, who was plated in a personal injury case that was filed in 2004. The parties to this suit are Mr. Miller, who was the claimant in a personal injury case filed in 2004, ASI Insurance, who insured Patricia Lynch, the person who hit and ran David Miller, and ASI is an insurance company, at least it existed in 2003, from the Chicago area who insured at-risk drivers primarily with low policy limit declarations. ASI, in 2003, became aware of the claim for Mr. Miller immediately after the accident happened in February of 2003. At that time, its claim adjuster, Jason Zradica, began monitoring the claim very diligently, and according to the claim's log, as early as one month after the incident of February 12, 2003, sent out a reservation of rights letter to its insurer, Patricia Lynch, attempting to inform her that they were going to require her cooperation, pretty much a standard reservation of rights letter. The gist of the letter was that she needed to talk to them, cooperate with them, etc. According to the claim's log, created within a month after the accident, the letter never reached Ms. Lynch. It came back and returned. It came back unclaimed. It had a copy of the policy in it that issued Ms. Lynch's policy. The policy apparently was contained within the documents in the claims file for Mr. Miller's claim. So there has been no evidence to dispute that at that point in time, ASI insurance had a copy of Patricia Lynch's policy. Patricia Lynch was served through the Secretary of State, and she was defaulted by court order of June 29, 2006. A judgment of $28,000 approximately was rendered against Patricia Lynch, and thereafter, a copy of that judgment was sent to the insurance company. The insurance company immediately thereafter, in August, filed a declaratory judgment action. And as part of their declaratory judgment action, and in compliance with Code of Civil Procedure 52606, attached a copy of what it purported to be Ms. Lynch's insurance policy. And this, although various versions are attached to different pleadings throughout the course of this litigation, unbeknownst at the time, the policy that was attached to the declaratory judgment complaint was actually Version 2 of Ms. Lynch's policy. In April of 2004, or May, excuse me, of 2004, at my request, ASI had sent Version 1 of the policy to my office. Version 1 of the policy contained an address for ASI that didn't exist at the time Ms. Lynch's policy was issued in January of 2003. ASI's industry is insurance. ASI is a company devoted to creating policies of insurance and selling them to citizens of Illinois. And it knows, it thrives on its ability to create a document that binds its insured to its company, and which, for all intents and purposes, creates a situation where ASI has defenses, can invoke rights of cooperation, and can demand things of its insurer. But crucial and imperative to the success of creating a document that it's going to rely on in future years is, number one, that it maintain that document so that in the event it has to come before a court of law, it can show the court of law why it's entitled to relief. And in this particular situation, it is ASI who invoked and asked for relief from the court to extinguish Mr. Miller's claim, a $28,000 claim. What were the limits on that policy? $20,000. So the high-risk pool insurance company? Yes. And there's no dispute about the limits, is there? I mean, there's no dispute about the deck sheet being correct. It's the policy attached to the deck sheet. I'm glad you asked that, Judge, because that is an issue that I raised in my brief. And here's the problem. Under the law in Illinois, and this district has affirmed this, the insurance policy is composed of various parts. And the declarations page and the policy body is the insurance policy. So my position is because ASI to date has never, as I stand here today, we do not have Patricia Lynch's policy. And I'm going to tell you why. Easily spoken, ASI admits during the second phase of the sanctions hearings that they haven't ever given us the policy. In Robert McKenna's affidavit, he states that they have erroneously given us three policies. Now, and, you know, how very generous of him to offer that. And I'm not trying to be sarcastic and I'm not trying to be facetious. But I want the court to understand that this, these giving, these littering, if I may, of these policies throughout this litigation was done for one purpose. A reasonable person could only conclude they had one purpose, and that was to deceive the court and me as counsel for the purpose of extinguishing my client's claim. And the reason I say this is during the trial, when it was discovered that ASI did not have the policy for Patricia Lynch attached to its declaratory judgment complaint, counsel for ASI began making excuses for that. Instead of owning up and saying, you're right. Now, we have Mr. McKenna's affidavit all this time later and all these hearings later saying, you know what? Yes, we did give you those. We gave you three, three non-policies. And instead of owning up to that and saying, you're right, and the Fifth District says dismiss the action or withdraw as counsel, what counsel did and used, participated with ASI's representative Scott St. John to convince the court that there were reasons, justifiable reasons, that they did not give us Patricia Lynch's policy. And one of the reasons suggested was they gave me the wrong policy because they wanted to notify me that ASI had a different address. Because the address on the one that they had given me meant it couldn't have existed when Lynch's policy was issued. But even worse than that, he elicited from ASI's representative that they intentionally, that it was their practice to attach the current body, regardless of what year they were in, whatever the current body generated by the computer, spit out to the original deck page. And certified it as the policy. And I'm getting to that whole issue of certification, Your Honor. For a company to operate within this state and present to a court of law in this state what it claims to be repeated certified copies of a document upon which litigation is based is outrageous. It's simply outrageous. And that's what ASI did. They had no qualms about sending me and attaching to its legal pleadings these policies that were supposedly certified. Now, I've been around for a long time, and I've always understood, although I haven't looked it up, certified means there's truth to it. If you certify something, regardless of whether it's a policy, a legal document, you're saying this is true. Well, what I find out now is ASI had no regard for whether it was true. Mr. McKenna, the claims manager for ASI, puts in his affidavit that we had produced all of these former certified policies. And in the very next sentences, which were erroneous, they had no qualms about just spitting out a policy and then sending it with a certification stamp on it. That kind of conduct cannot be tolerated. And that's why I'm here. Your Honors, I'm here because ASI was sanctioned, but it was not really sanctioned. We had a $28 million net worth company. And the judgment, the exposure to this company was $28,000, assuming they couldn't prove that they had a debt page. What in the world would this company do if its exposure were $1 million, if its exposure were $2 million? This company wanted to trample on David Miller. And by doing so, to quell litigation, to make it pay claims. I don't know the history of its payment of claims, but I can only conjecture based upon what occurred in this litigation. David Miller is a person who, and all those like him, will not have representation. If this tactic succeeds, David Miller's of Illinois will not have representation. Because, believe me, I'm not patting myself on the back. What lawyer in his or her right mind, knowing that ASI will never pay a claim, will scorch the earth, will take whatever means necessary to avoid it. What lawyer in his or her right mind will take on a case like that and litigate it for 10 years for $28,000? So in effect, what ASI has subjected itself to, a mere $60,000 in attorney's fees, oh my goodness, what is the bonus to them at the end of the day? If they stop people from filing claims, such as David Miller, and lawyers from representing those people because the reward just isn't there, they win. They can sell all these policies, and they can get very, very, very rich, all at the expense of the little guy like David Miller. David Miller, who walks around on the circle of Balboa in his neon vest so that cars don't hit him anymore. You know, it's a good thing he's very unsophisticated because he stops me on my way back from the courthouse all the time and says, you know, Ms. Fitz, when will I get my money? I know that judge gave me money, but when am I going to get it? And I tried to explain to him, and I can't give him a rational explanation, quite frankly, because there isn't one. Whenever a company asks… So they still haven't paid the $20,000? No, no. And, Your Honor, whenever a company and its counsel comes in and says that we intentionally attached the current body, the 06, the 08, the 2010 body to the original debt page, and that's what we give you as a certified, that's our policy, and that's what that transcript says. That is intentional conduct. Well, I guess what you're saying is an insurance company can't be that sloppy. They had to know that. That's exactly what I'm saying. They had to know. But didn't Judge Baca find that? Well, initially he did. In his order of July 29th, he – I don't know that he came right out and said it, but he said he found that their actions could – had to be – and I don't know if he used the word willful. I've got an order right here. The insurance company's cavalier lies a fair attitude in submitting sworn documentation that it later admits is incorrectly shocking at worst and severely lacking in due diligence at best. In any event, the company's misconduct should not prejudice the victim of a tort. So how did he come up with the $60,000? It was our attorney's fees. So he gave you your attorney's fees plus costs. Yes. And that's it? Yes. So there was really no punishment, and there was no relief for David Miller. There was nothing to give David Miller a nod and say, you know, Mr. Miller, I realize what you've gone through, and no company should be allowed to treat a litigant this way. Was the award that you got under Rule 137? It is under – I'm not certain, to be quite honest with you, because he did find that sanctions should be imposed under both 219C and 137. My take on it is that the award was directed more toward 219C, and my take on it also is that Judge Babcock, because he could find – according to Judge Babcock, could find no case, and that's in his other order, that he could find no case which would allow him to penalize him with some monetary sanction beyond attorney's fees, but that's what he's limiting his sanction to. As the Court well knows, I take the position that Creighton authorizes sanctions beyond their attorney's fees. I think that in that case, and Your Honor, obviously you know what that case means. I know it well. Yes. That it authorizes the Court to issue monetary sanctions beyond attorney's fees and costs. And I must say, if ever a case cried out for some type of penalty, extreme penalty, to stop this conduct, this case does. In Creighton, as I recall, the attorney, defense counsel, was sanctioned for merely sitting there and allowing what he knew to be misrepresentations made to the Court. In the case before the Court now, what we have is participation, willful concoctions, schemes, if you will. And I know my time is probably getting thin here, so I want to point something out. Early on in this declaratory judgment portion of the litigation, I was sent a request to admit. And attached to that request to admit was urging to the policy of insurance, which at the time struck me as a little odd. But I thought, well, you know, it was produced to me in discovery. I took the deposition of Scott St. John, the same gentleman that testified at trial. And I asked him twice, is this the policy that was issued to Patricia Lynch? And I was told, yes, under oath, that the deposition, yes, it is. Then the request to admit came. And I, of course, having no other knowledge, said, yes, this is Patricia Lynch's policy. Next thing I know, that version 2, which McKenna now has agreed, everyone's agreed was not her policy, is attached to a motion for summary judgment. And an attempt was made using that version that I had admitted to stop the motion. But that's not the worst. During the trial of this cause, whenever I caught Scott St. John and made him admit that he did not know what was in Patricia Lynch's policy with regard to the cooperation clause, counsel for ASI argued that I had waived that argument because I admitted in the answer to request to admit that it was not, that it was Lynch's policy. Now, how could Trump and how, if it wasn't a machination, if it wasn't a scheme, I have no other explanation for the use of the policy in that fashion. To argue that I, because I had admitted what they had given me, a false policy that they had given me, that I had waived my ability to challenge that it was the incorrect policy is incomprehensible to me. So- So what are you looking for? Are you looking for this court to award you damages, a number? Or are you looking for a remand to the trial court saying there is a policy in Illinois where under 137 or 219C that additional damages can be considered? Which are you- I'm asking this court to penalize ASI and its counsel for their conduct. But that would require us looking at all the evidence and doing the function of the trial court, wouldn't it? It would. And I suspect that counsel for ASI- Go ahead. Counsel for ASI is going to ask that this case be remanded for trial on the merits. There was a trial on the merits. We did the entire trial. And at the end of the trial, the only evidence as to what was in Patricia Lynch's policy was Scott St. John admitting that he did not know. Okay. And what was in it. So I'm getting off point, and I understand that. Well, no, you'll get a chance at rebuttal, so I can't give you any more time. All right. But you will have a chance to come back. Mr. Knapp. I'm just going to stand up, Mr. Knapp. I have just a back issue. Make yourself comfortable, of course. Don't be insulted. Speaking of which, I guess from a procedural standpoint, we have filed a cross appeal, so I assume we would answer by the time at the conclusion of argument of counsel for the appellant. I believe that's correct. I have a presentation to make, but I think it may be helpful first to answer some questions that were raised in counsel's argument. First of all, the question was, were you only awarded your attorney's fees? And the answer to that, contrary to counsel's suggestion, is no, that's not all that was awarded. The policy limits were awarded. Interest on the policy limits were awarded. Attorney's fees and costs were awarded. And that was all done based on my proposal to the trial court that, yes, we certainly took issue with the fact that the court made a determination to award sanctions at all. But once we got past that phase and got into the damage portion, I argued to the court based on precedent, including precedent of this court, that the appropriate measure of damages under the cases is policy limits, interest on the policy limits, and attorney's fees. Counsel for Mr. Miller didn't even ask for the interest, but I suggested to the court that I felt if he was going to fashion a sanctions remedy, that that should be included. So the award that was made included $20,000 policy limits, interest, attorney's fees, and litigation costs. And a substantial offer was made on this case since that question was asked before this case proceeded to appeal. So the suggestion by counsel at ASI has never paid anything, never been willing to pay anything. I think it's just really an attempt to poison the well, if you will, with the court, because that has been done. In fact, my client has posted a cash bond in this case in St. Clair County. So I think there's a little invective flying here that is not appropriate. I would also add that it was a suggestion that I said in the trial court that the reason we gave him a policy with this other address was to put them on notice of the new address. That is not what I said. What I said was that was an incidental effect of the providing of that policy, but that was not the purpose for which it was given. But more fundamentally, talking about these versions of the policy, I think it's important for the court to appreciate how these policies work. What I said in the trial court and what I maintain in this court is that the correct policy form was supplied in the initial policy that was given in this biz, in the policy that was used in support as an attachment to the complaint for declaratory judgment, and in the policy which we have asked the court to substitute. Finally, the policy form itself is unchanged. The only difference is that when ASI moved its headquarters from Rosemont, Illinois to Elk Grove, Illinois, it updated the notice address in the policy, which it should have done, in order to notify policyholders where they should send notices of claim. The only other difference in the policy form that counsel has identified and argued in this case is that whenever there's a change in the officer, on the very back page of the policy form, there's a place where it lists, a very tiny print at the bottom, the policy form is signed by the president and identifies the secretary and such. That was updated during the years when there were changes in the office holder. So let me ask a question about that, just to make sure I understand. When an insurance company comes out with a new form of a policy, they have to file with the director of insurance in the state of Illinois. The policy you're talking about, that form was filed, but then what happened later was when the company changed its address, changed an officer, they went ahead and made those changes in the policy form without filing that as an update. That's correct. And what are the rules about that with the director of insurance? The affidavit of Robert McKenna, which was filed in his court, which is uncontroverted, he explains that process as a professional in the insurance industry. And what he explains is whenever there's a change in the policy form that is substantive, it has to be resubmitted to the Department of Insurance and has to be approved. But an update of the identity of the officers or the address of the company does not have to be resubmitted. So I guess the point I'm trying to make is this. Is there an address discrepancy in that policy? Yes, there is. It's unfortunate. I'm the guy who filed it the night before trial. As soon as I learned of it, I made the court and counsel aware of it. Ms. Fiss has sort of suggested that she discovered this or that she drew this out in some masterful cross-examination of my client. To the contrary, I presented that testimony on direct exam with my client and explained to the court that this policy, while the form was the same, the address had been updated with the body of the policy. And that was my position that day that except for the address, the policy itself is the correct form. I took that position then. The same policy. Exactly. I took that position then, and I take that position today. The policy form is correct. Is there a technical deficiency? Technically, the address was updated, and that shouldn't have happened. Does that paragraph in the policy, which you claim is the same, provide your defense to coverage? Yes. There are two paragraphs in the policy that we relied upon, the cooperation provision and the notice provision. And they haven't changed? They have not changed. And the policy form is the same. It bears the same number that was approved by the state. Now, I'm the first one to come in here and say this was an unfortunate set of circumstances. I was embarrassed by it. I'm embarrassed by it now to be in front of this court and have to explain how my client, in the process of preparing a certified policy, got a form that had the new address on it. Technically, it should have been. Don't your policies at the bottom have the B-2 or the dates or things like that? It has the body number, which is the number that is assigned to it, ASI 2405-00, which identifies the date that it was approved by the or submitted and approved by the Department of Insurance. And that policy form number is on all of these. The first policy that was given in this case and the second policy that was attached to the declaratory judgment. Let me ask you a question there. I'm sorry to interrupt you on that. But when these revisions were made for address and so forth, then was anything put behind that as revised as of a certain date or anything like that? Or would that be one procedure anyway to do that? To my understanding, it was not. And based on the affidavit of Mr. McKinnon, it's my understanding, and I don't claim to be an expert in the insurance industry, but he is, according to him, if simply updating the officers and such is put on, a new number is not assigned and is not required to be assigned. Not changing the number, but just on the end of it, put in parentheses, revised. It certainly wouldn't be a bad idea. Right. It certainly wouldn't be a bad idea. There was nothing like that. It was not done and, to my knowledge, was not required to be done. But fundamentally, this is a situation where someone made an error in putting these together. Again, as I said, nobody's happy about it, especially me, because I'm the guy who gets to take the brunt of it. I get the personal attacks, the character assassination, because now there's a detainee holding me personally responsible. But the fact of the matter is there is absolutely no evidence to suggest that anyone acted willfully. On the contrary, Judge Babka, in his December 5, 2013 order, made the express finding that there is no evidence of intentional concealment or willful misconduct on the part of ASI, which would warrant the award of monetary sanctions beyond those set forth above, meaning the attorney's fees, the policy limits, and the interest. I'm wondering how you make that finding if you've got somebody in the company responsible for policies testifying under oath that these are the accurate policies. I'm just... I think that's where... Where's the line between negligence and willfulness? Well, apparently Judge Babka, whose ruling is being reviewed under abuse of discretion standard, made that determination when he made his... entered his orders in this case. The July 29 order specifically finds that, and the language was quoted by Ms. Fish earlier in her argument, but it says specifically that he considered it to be... Let's see if I can find it. Is that the July 29 or December 5? This is the July 29 order. And that's the order in which he determined that sanctions would be awarded and reserved the issue of how much. And he says in here, plaintiff did not conduct a reasonable investigation or inquiry before certifying the documents. He goes on to say that... I'm trying to find the specific language. Okay. I don't want to take up your time. Okay. There's a discussion in here about... in which he makes the comment that I think he said... That's okay. I mean, we'll read it, but I don't want to waste your time if you have more things to say. What is your counterclaim based on? The counterclaim is requesting that this court vacate the determination that sanctions should have been awarded. We believe that since there was no evidence, as the court found, of willful misconduct or intentional concealment, that, in fact, this was an error that was made inadvertently on the part of ASI that sanctions should not have been awarded in the first instance. Well, the standard is not willful or intentional concealment, is it? I mean, the Rule 137 says, you know, you're vouching for the accuracy of your pleadings. And the insurance contract is attached to the pleadings, and its accuracy is being vouched for. Yeah, I think... It's more like diligence, isn't it? Well, under 137, I have a copy of the Rule also. I think under 137 it has to do with whether you've filed a frivolous pleading. Well, you're warranting that certain things are true, factually true. Right. Whether it's a reasonable basis. Guaranteed by existing law, et cetera. Right. And the court found in that case that those sanctions should be awardable against ASI, not against ASI's counsel. Well, that kind of takes me back to my question before, is you're testifying under oath, but three policies are the actual policies. By operation of certification of whoever certified the policies for the carrier? Yeah, and, again, I guess, as I say, my view of it has always been that that's the correct policy for you. The discrepancies that have been identified, the address discrepancy is a significant one, but the discrepancies about the differences of the officers and all that, I still think it's the correct policy. Technically, there are discrepancies between the policies, but I didn't certify them. And, of course, you're presented with that, so you took their word for it. Yeah, exactly, as we would do with any client who presented us with a document. And as Ms. Fisk did when she answered the request to admit. Exactly. And, you know, this is not an inconsequential thing. As I recall, the insurance code actually provides a procedure to request for an insurance company to provide you with a certified copy, and this happens all the time, and you get it, and, you know, deck actions get filed over other issues or stacking or whatever, and everybody relies on that certification. And a lot of things kind of break down if you can't rely on it. You agree with that, don't you? I agree. I agree that it is not an inconsequential event, and ASI has been forced to face some consequences in this case. And our position is, although we think we would ask this court to vacate the determination, we think that the sanctions entered by Judge Babcock were the most severe permitted under the rules. Counsel here is now asking for a monetary penalty. The Cretton case does not stand for that proposition, nor do any other cases that are cited here stand for the proposition that a monetary penalty is permitted under Rule 137. On the contrary, as was stated in open court in the final argument on this matter, neither the judge nor counsel for ASI nor counsel for Mr. Miller were able to find any case reported in the state of Illinois that authorized the issuance of a monetary penalty under Rule 137. What about 219C? Under 219C, the rule specifically says that a monetary penalty can be awarded only where there's a finding of willful, find the language here, only where there's a finding of willful misconduct, which Judge Babcock expressly found there was no evidence of. What about the amount of $60,000 for fees? That was the number submitted by Ms. Vest. He gave her exactly what she asked for, not a penny less. So she was fully compensated under the award for the fees that she submitted. Has there been a bad faith cause of action against the insurance company file? No. So all the monetary award right now has come through the sanction hearing process? That's correct, yes. And I wanted to address one other thing. There was a suggestion that ASI somehow concocted this scheme of a false policy in an effort to gain an advantage. There's no advantage to this policy. The policy provisions are unchanged from one version to another. To suggest that somehow ASI had a motive to make a mistake in the presentation of its own policy, I think, applies and traces the facts. There's no advantage to having done that. And, in fact, ASI, through its counsel, expressly, affirmatively notified the court, once the error was discovered, to its great disadvantage. And that's what makes it so much different from the cases cited by counsel, like Creighton, where the parties is a case. You pronounced her name Creighton? Creighton, okay. In the case of Creighton and Nisman, and the other cases cited by counsel for Miller, those are circumstances where attorneys affirmatively and parties affirmatively withheld and concealed evidence. There's no evidence of that here. For one thing, the error was apparent on the face of the document. Nobody noticed it until I sat down with Scott St. John and we looked at the policy together the night before the trial and identified this discrepancy in the address, all other portions of the policy being correct. But the trial you referred to is the definition? Yes. I'm sorry. The underlying case was resolved by default judgment, which was after ASI received notice of the default judgment, they secured counsel from his lynch to attempt to get the default judgment set aside and defend the case of merits. That was ultimately unsuccessful and up on appeal. And so there were two tracks going on. ASI is to hire counsel from his lynch to try to get the default judgment set aside and also hire coverage counsel to address the government issues. So they provided two tracks associated with the case. But there just simply is no similarity between the cases relied upon by the plaintiff and the cases relied upon by Miller and the cases relied upon here. No evidence of any intentional lawful misconduct on the part of ASI or its counsel as expressly found by Judge Babka. No case law that would support the issuance of monetary sanctions being already awarded by Judge Babka. Judge Babka's decision in this case we think was, in terms of the damage aspect of the case, was completely inconsistent with the law. Thank you. We would ask that this court has to be main appeal affirmed. Let me say that here. Our request is that the court vacate the award of sanctions against ASI. But in the event that the decision to award sanctions is upheld, we believe that Judge Babka applied the correct measure of damages and awarded the damages that would be appropriate under the rules of the case. Thank you very much. Are there further questions? I want to dispel a representation that was just made, that counsel for ASI walked in and disclosed that the policy at issue was not actually religious policy. What happened was, in the sanction hearing, which was conducted long after the trial had concluded, counsel for ASI told everyone that he had known on the eve of the trial that the policy was not lynch's. He did not tell anyone at that time. He walked in and put on a defense based on what he said was industry standard to take the policy form. We're now not talking about lynch's policy. We're talking about a policy form and marrying it to the debt page. We went through the trial until I had Scott St. John on the stand, and I began asking him questions about the policy terms, and he finally admitted he didn't know what they were. As you sit here today, you have no documentation to show me what, if any, cooperation clause was in effect in the policy proper for the period of time during which this accident occurred. Answer, no. You don't have any? No. So to try to sweep this under the rug as a policy form, which makes it all okay because we all know what's in it, is just ridiculous. And to suggest that counsel came in and tried to enlighten all of us that they didn't have lynch's policy is another deceit. It did not occur. We were into the sanctions portion before Mr. Knapp told us that he had known on the eve of trial, but did not walk in, didn't call me and say, Ms. Fisk, we don't have our policy. We're going to dismiss. I'm going to withdraw. No. They tried to continue the deceit. They're trying to continue it today. And I want the court to know that as far as this form being all the same as to cooperation clauses, that wasn't the only discrepancy. They have never been able to create, in all of the machinations, have never been able to create a policy that agrees with that initial reservation of rights letter sent a month after the accident as to the terms and the location of the clauses in the policy. And I want you to know this. Version one doesn't agree, which was sent to me in May of 04. The terms and the position of the policy on different clauses don't agree with the one attached to the death action complaint. Let me ask a question about that. Sure. You said earlier, and I gleaned from the briefs and so forth, the reservation of rights letter was returned. It was. As undelivered. The policy was in it. And the policy was in it. Yes. And was that actual document then available? Never. Okay. Never. Okay. So what you had, everybody had a copy of the reservation of rights letter that said, look at paragraph five. And a copy of the envelope that it was returned in. But not the policy. Never the policy. Okay. And I want you to know version two had the wrong president. The signature of the president is required. It had the president from a year that he wasn't president when this policy was generated. Version three, the best one of all, again had a wrong president, a different wrong president for that period of time. And it required that Ms. Lynch's application be attached and become part of the policy. It wasn't there. Now, it's not for me to guess what in the world was going on. It's their burden. You come to court. You file a death action. You attach the document that's going to be the basis for your declaratory judgment case. You don't concoct. You don't withhold the information that you don't have the policy. And you certainly don't stand here before this court and argue those same things. This corporation, it's not a person. It has no moral compass. It has no soul. And it will continue to act in this manner and take advantage. If there's a loophole here whereby a litigant, after two sanctions hearings, can come in here and say, well, this is what it was. And, you know, I meant to tell them that I didn't. But if that's a loophole that a corporation can use to file and succeed in a declaratory judgment action, then God help the state of Illinois. Because I don't know where this is going to go. Thank you very much for your time. Thank you, Ms. Casey. This case will be taken. Oh, I'm sorry. You never bow. I apologize. Just very briefly. I'm sure the court's heard all the wants about this case. I do have a question. Which is true? Did you tell her the night before trial, or did you wait until during the sanctions hearing to tell her? Well, neither. Which is true? What happened was, I met with my client the night before the trial. The morning of the trial, I presented this evidence about the address discrepancy at the trial the next day, within hours. But you didn't tell her that there were all these policies. This issue did not come to light. This question of the first versus the second policy, the later policies came later. So there were two policies apparently in existence at the time of the trial. The first was the one that was sent to MSFIS in May of 2004, before there was ever any coverage litigation. The second one was the one that my client provided to me, and I attached it to the complaint for declaratory judgment. I was under the understanding that those two were identical. And, in fact, they were identical, but for the difference of the officers. The updated address was contained in both of those two policies. So policy, as she's referred to in Version 1 and Version 2, were identical to each other, except for the change in the officers that occurred between the time the first one was issued in May of 2004 and the second one was issued before filing in August of 2006. I just want to make sure I understand, because there are a lot of hearings here and everything. The night before the trial of the declaratory judgment action, you talked to my client and discovered this. Then what you're saying is the next day you put him on the stand, and in direct examination, the record will show that you brought up on direct examination these discrepancies. This address contained in the policy was not the address at the time that the policy was initially issued, that it was the new address of the company since October of 2003, and that is incorrect. Yes. So no phone call was made to Ms. Fitts saying, this is coming. No. This was like a surprise. It was within hours. I met with the client the night before, the next morning, exactly. And candidly, I have to say, in retrospect, it's a bigger deal than it seemed like at the time. To me, I didn't consider it to be that big a deal because it was just the address. Everything else, as I understood it from my client, was the same, and I still understand that to be the case. So I thought it was a rather minor issue. Obviously, it's turned into, by virtue of some very aggressive lawyering, has become a big issue now. But at the time, to me, it seemed like a relatively minor one, just the difference in the address discrepancy. I guess, really, that's all I have to say on my portion of the rebuttal unless there are other questions. Thank you, Mr. Manning. Okay. This matter will be taken under advisement, and disposition will be issued in due course.